BULLOCK *et al v.* SANFORD CONSOL. SCHOOL DIST.[*]

(Division B. Feb. 4, 1929, Suggestion of Error Overruled April 1, 1929.)

[121 So. 267. No. 27752.]

*Corpus Juris-Cyc References: Constitutional Law, 12CJ, section 792, p. 1093, n. 41; Evidence, 22CJ, section 70, p. 139, n. 46; Schools and School Districts, 35Cyc, p. 843, n. 37; p. 850, n. 94.

*W. U. Corley,* for appellants.

*E. L. Dent,* for appellee.

ETHRIDGE, P. J. This is an appeal from the chancery court validating school funds issued by the Sanford consolidated school district. The original Sanford consolidated school district was created in 1916, and the territory then embraced in it was described and the school building located at the then site of the Sanford schoolhouse. Subsequently certain territory was released from the school district; and in 1924 an order was passed by the school board fixing the boundaries of the consolidated school district and consolidating with it certain other schools, which read as follows:

"The matter of changing the boundaries of the Sanford School district coming on for hearing, on a petition of the qualified electors of said district, asking for the elimination of all that part of sections 23, 24, 25, 26, in Township 7 North, Range 15 and Section 30, Township 7 North, Range 14 West in Covington county, Mississippi, and the board being fully advised in the premises, find, that the petition carries a majority of the qualified electors and the present district as outlined is at a loss to the district, and that it would be to the best advantage of the district to eliminate all territory embraced in said sections as prayed for. "It is therefore ordered, that said petition be and the same is hereby granted as prayed for and the boundaries of said Sanford School District, be and the same is hereby established as follows, to-wit: —Begin at the Southeast corner of Section 32, Township 6 North, Range 14 West; on county line, and run north two miles; thence east one mile to southeast corner Section 21, Township 6 North, Range 14 West; thence North three and one-half miles; thence West one-half mile; thence north one-half mile; thence West one and one-half mile; thence north one mile; thence west to Okotoma Creek, or three miles, thence in a southeastern direction with said creek to the southeast corner of Section 1, Township 6 North, Range 15 West; thence South two miles; thence West one mile; thence South one mile to Bowie Creek; thence in a southeastern direction with said Bowie Creek to the County line in Section 31, township 6 North, Range 14 West; thence east to point of beginning, and that the territory embraced within the said described boundaries be and the same is hereby declared to be the Sanford School District and the correct and legal boundaries of said District.

"M. C. Shoemake.
"J. C. Sumrall.
"J. S. Welch."

The order of 1926 reads as follows:

"Sanford Consolidated School District, location of school building in Northwest Quarter Northwest Quarter Section 17, 6, 14. The Sanford-Rials Line and Bay Springs petition for Consolidation to be allowed and confirmed coming on for hearing on motion, the consolidation was allowed and so ordered with metes and bounds as follows: South half and Northwest Quarter, Section 4, Township 6 North, Range 14 West; all of Sections 4, 5, 6, 7, 8, 9, 16, 17, 18, 21, 19, 20, 29; all of Section 30 East of Bowie Creek; all of Section 32, all of Section 31 East of Bowie Creek; Township 6 North, Range 14 West; Section 35 East of Okotoma Township 7 North, Range 15, West; all of Section 36, Township 7 North, Range 15 West; Section 31, Township 7 North, Range 14 West; all of Section one east of Okotoma Creek; Township 6 North, Range 15 West; all of Section 24, all of Section 25 east of Bowie Creek Township 6 North, Range 15 West, or beginning at the Southeast corner of Section 32, Township 6 North, Range 14 West, on the county line and run north two miles, thence east one mile to Southeast corner Section 21, Township 6 North, Range 14 West; thence north three and a half miles; thence west one-half mile; thence north one-half mile; thence west one and a half miles; thence north one mile; thence west to Okotoma Creek; or three miles thence in a southeastern direction with said creek to the southeastern corner of Section 1, Township 6 North, Range 15 West; thence south two miles; thence west one mile; thence south one mile to Bowie Creek; thence in a southeasterly direction with said Bowie Creek to the county line in Section 31, Township 6 North, Range 14 West; thence east to point of beginning. That the said territory embraced in said described boundaries be and the same are hereby declared the boundaries of the Sanford Consolidated School District."

In the office of the county superintendent was a map of the school district, approved by the county school board, showing the territory embraced in the Sanford consolidated school district, and the location of its schoolhouse, and this map was introduced in evidence on the hearing.

It will be noted that the order for 1924 set out is silent as to the location of the schoolhouse. In 1928, a bond issue for improvements was desired, and the board of supervisors, entertaining some. doubt as to the sufficiency of the above orders made in 1924 and 1926, presented a petition to the school board praying that, if the district was not already legally created, it be so by the board, and another order was entered on the minutes of the board setting out the boundaries of the district and the sections and parts of sections embraced in such territory. But again the location of the school building was omitted from the order. These bonds were for the erection of additional buildings for the use of the school and for wagons used in transporting the pupils to and from the school. The bonds and the proceedings in connection with their issuance were sent to the state bond attorney, and certified by him to be in conformity with the law, and notice was given under the law of the proceedings, objections having been filed thereto. The record contains the proceedings had before the board of supervisors on the bond issue, including the form of the bonds.

Prior to the enactment of chapter 283, Laws of 1924, consolidated school districts were created in the same manner as any other district—by the county school board either upon its own motion or upon the petition of persons interested. By section 100 of chapter 283, Laws of 1924, it is provided:

"The county school board at any regular or at a special meeting called for that purpose, on petition of a majority of the patrons of a proposed consolidated school

district may form a consolidated school district and it shall be the duty of the board to determine and to describe the boundaries thereof and to name the sections and parts of the sections composing the district and to designate the location of the schoolhouse."

The schoolhouse, as shown by the proof, remained as it was located in 1916, and has been continuously used as a school building at that place for more than twenty-two years. The appellants rely mainly upon the omission of the location of the school building in the orders of 1924 and 1926 to defeat the bond issue, depending upon the case of *Board of Supervisors* v. *Brown,* 146 Miss. 56, 111 So. 831, wherein it was held that:

"Designating the location of the schoolhouse is one of the essential requirements of the statute, which is the only authority to create the district; and, as the formation of the consolidated school district depends entirely upon the statute, the fundamental requirements thereof must be complied with, otherwise a district cannot be formed."

The orders of 1924 creating the consolidated school districts are sufficient as to the territory described, but fail to show the location of the schoolhouse therein. The district was already a consolidated school district, but the new district added certain territory to it that had formerly been embraced in it, and the maps made and approved by the school board, although not referred to in the order on the minutes creating the district, are yet on file in the superintendent's office, and are official maps showing the location of the schoolhouse. Merely changing the boundaries of a consolidated school district does not require a relocation of the school building.

The legislature, by chapter 280, Laws of 1926, passed an act ratifying proceedings undertaking to create many other consolidated school districts. Section 1 of this act reads as follows:

"Be it enacted by the legislature of the state of Mississippi, that all proceedings heretofore had and taken by the board of supervisors of any county in this state, or the school board of any county or municipality in this state, or by the board of commissioners or the board of mayor and aldermen of any municipality of this state, or by the board of commissioners of any drainage district of this state, for the creation of any consolidated school district, rural separate school district, municipal separate school district, or other school district, or drainage or levee district, or other taxing district, or the proceedings or orders of any chancery court in this state for the creation of any drainage district within the state of Mississippi, be, and the same are hereby, approved, ratified and confirmed, and said district, or districts, as so organized by the orders of said boards or the decrees of said chancery court, be, and the same are hereby declared to be valid and duly organized districts as provided by the general laws of the state of Mississippi, regardless of any defect or omission or irregularity in the proceedings for the organizations or creation of the districts hereinabove mentioned. Provided, that where the formation of such districts was or is in litigation, or is contested, then such contested and unformed district shall not be affected or validated by the provisions of this act."

It will be noted from the reading of the statute that such districts are declared to be valid and duly organized districts, regardless of any defect or omission or irregularity in the proceedings for the organization, or creation, of the district mentioned. The legislature had the same power originally to prescribe under what conditions a district could be created and to confer such authority absolutely upon the school board or some other board, while section 100, chapter 283, Laws of 1924, made the location of the schoolhouse one of the fundamental requirements of creating a school district. Yet

the legislature of 1926, recognizing the situation that existed in the state with reference to inaccuracies and omissions in creating such districts, approved and confirmed the districts as created. It could have, in the beginning, omitted all reference to the location of the schoolhouse, and it follows by its curative act that as to districts already created and in operation the defects were overlooked, and location of the schoolhouse, as shown by the map, was approved and ratified. The act is a general act, and applies to all school districts, and is, we think, a competent enactment. The effect of it is to ratify the district and the location of the schoolhouse therein as shown by the official map. The court belo·· reached the same conclusion, and the decree will be affirmed.

*Affirmed.*

### On Suggestion of Error.

After the record reached this court, and before the opinion heretofore-handed down in this case was written, a motion was filed by the appellant, charging that there was a change in certain of the orders, minutes, and proceedings before the county school board between the hearing in the chancery court and the making up of the record for this court by the clerk, and that the clerk had copied the said proceedings according to the papers as they appeared then before him, and praying for a *certiorari* to send up the original records of the county school board, and for certain corrections in some orders and proceedings. This motion was overruled by the court without writing an opinion thereon. We proceeded upon the idea that it was not the function of this court to determine such matters; that the making up of the record in the court below, and the approval of bills of exception, etc., were functions of the trial court; and that this court only dealt with the record as made up and approved by the judge, or in the manner provided by law. We had

recently decided to this effect in *Planters' Oil Mill* v. *Y. & M. V. R. R. Co.,* 150 Miss. 813, 117 So. 242, and did not deem it necessary to write further. Since then, however, we have further written upon the question holding that this court has no jurisdiction to make such corrections (*State* v. *White,* 119 So. 807), referring therein to several preceding cases as supporting the principle therein announced.

There was, therefore, no error in overruling the motion, and in deciding the case upon the record as certified to us from the court below. In writing the opinion formerly handed down, we erred in stating the dates of certain orders therein set out. An order made in 1926 was stated to be an order of 1924, and an order of 1928 was stated to be an order of 1926. In stating the case in the consultation room, all the various orders of the school board, beginning in 1916, and up to that of 1928, were stated and considered; but, in preparing the opinion, the errors came about by having a statement on a page where the orders appeared, but referring to orders on preceding pages. However, the dates of the orders were not very material, as will hereafter appear, for the reason that the court's opinion was based upon the effect of the curative statute. Chapter 280, Laws of 1926. In the former opinion, we omitted the order of 1924, which it becomes pertinent now to set out. It reads as follows:
"June 9, 1924.

"The county school board met at the call of the Superintendent of Education and present Mr. M. C. Shoemake, Beat 1, Mr. J. C. Sumrall, Beat 2, Mr. G. B. Rogers, Beat 3, Mr. F. M. Mathis, Beat 4; and Mr. J. S. Welsh, Beat 5. Rials line school was transferred to Sanford except Mr. R. Mooney's Northeast Quarter of Section 4, Township 6, Range 14, one hundred sixty acres more or less, was transferred to Mt. Tabor Northeast Quarter, section 4, Township 6, Range 14. All of Sanford, Pickering, Bay Springs, and all Rials line was consolidated with the ex-

ception of J. R. Mooney Northeast Quarter, Section 4, Range 14.

"Board adjourned till after dinner.

"A. T. Lindley from Ora to Collins, Northeast Quarter, Section 23, Township 8, Range 16.

"Proved and so ordered. Board adjourned to meet a Saturday before the 2nd Sunday of July, 1924.

> "M. C. SHOEMAKE, Beat 1.
> "J. C. SUMRALL, Beat 2.
> "G. B. ROGERS, Beat 3.
> "J. M. MATHIS, Beat 4.
> "J. S. WELCH, Beat 5."

It will be noted from this order that it was passed on the 9th day of June, 1924. Chapter 283, Laws of 1924, named the "School Code," became effective on the 1st day of July, 1924, and sections 99 and 100 of the School Code, providing for the formation of consolidated school districts and defining them, were not then in force, and the requirements therein made have no application to the order passed on June 9, 1924. In the case of *Trustee* *of Walton School* v. *Board of Supervisors*, 115 Miss. 117, 75 So. 833, we held that a consolidated school district was nothing more than two or more common schools placed together, and that the school board had full jurisdiction to create a consolidated school district, without reference to a petition by the people or elections, as they had to do in other cases. This holding was reaffirmed by us in *Barrett* v. *Cedar Hill Consolidated School District*, 123 Miss. 370, 85 So. 125. Therefore a petition was not necessary in 1924 in order to create a consolidated school district, and neither was the requirement that the order creating the district should locate the schoolhouse. The only statute that might be considered as having been not followed was chapter 198, Laws of 1922, which provides for the adding of territory to a consolidated school district.

The order of June 9, 1924, did not, as it should have done, set out the territory embraced in the consolidated school district, as it would exist, but the proof shows a map on which is indicated both the territory embraced and the location of the schoolhouse therein, as shown by the record before us, which map was approved by the school board and filed in the office of the superintendent of education, and showed the territory and boundaries of the schoolhouse, and its location, as of April 12, 1926 and June 9, 1924, and further showed that both orders dealt with the same territory. The Sanford consolidated school district was created in 1916, and the schoolhouse was located in the district at that time, and has since been used at the same location. In 1917, some territory in the original district was released, on petition of people living in certain territory, from such district, and there appears to be no question as to the power of the board in releasing this territory. This releasing, however, did not make it necessary to relocate the school building, and it remained at the site of its location on the Northwest Quarter of Northwest Quarter of Section 17, Township 6, Range 14.

The order of 1924 names the three schools consolidated by that order, and consolidates them, with the exception of certain named territory. The districts so consolidated were previously created, and were school districts of the county. By section 4512, Code of 1906, the county superintendent of education and the school board are required to define the boundaries of the school districts outside of separate school districts, or to make alterations therein, and to locate the schoolhouse in each of such districts, if not already located. Section 4514, Code of 1906, requires separate districts to be made for white and colored races, and for the districts for each race, to embrace the whole territory of the county outside of separate school districts, and directs them to locate such districts with reference to obstructions and

swamps, streams, etc., and to provide for special districts in certain cases.

There is no showing in the record that the three districts consolidated in 1924 had not been defined by the school board as required by the law; but the proof, on the contrary, shows, by the school maps, the territory created in that district and the location of the school building therein. In the absence of specific proof to the contrary, we must presume that the county school board had located the boundaries of these several districts, and, if they had done so, there was such certainty of the territory embraced in the consolidated school district, ascertainable from the record, that its creation would not be void; the law, at that time, not requiring school buildings to be located at the same time and in the same order as the order creating the district.

In addition, as stated above, there is an official map, showing the territory embraced in the district and the location of the school building, in which it appears that this territory was not changed by the order of 1926, but conforms strictly to the map. In other words, the order of 1926 merely undertook to render certain the description on the minutes of the board, as required by chapter 283 of the Laws of 1924. It appears that the order of 1928 was also made in a further effort to insure the legality of the consolidated school district. The effect of chapter 280, Laws of 1926, referred to in the former opinion, was to cure irregularities in the proceedings in creating school districts, and to make them as legal and valid as districts in which no irregularities had occurred. We must treat the act just as though all proceedings in reference to the creation of the district were before the legislature, and that the act passed by them met all these defects, and was a ratification and approval of what the school board had done in each particular case. It is true the act of 1926 became effective a few days before the order of 1926, but, as stated above, the order of 1924,

and the map accompanying it, embraces the same territory as that described in the order of 1926. The said act of the legislature had the effect to make the school district created in 1924 a valid district, and the orders of 1926 and 1928 were merely efforts to make the records of the counties show, with precision, what the legislature had created by its act ratifying the orders of the school boards. Where a consolidated school district is created, and the school building regularly located, and thereafter there is a change in the district's limits, it is not necessary to relocate the school building; but the same remains where located until changed by order of the school board to relocate the school building.

It follows, from these views, that the suggestion of error must be overruled.

*Overruled.*